Roy Charles WILLIAMS, Sr.,
Petitioner-Appellant,

v.

UNITED STATES of America,
Respondent-Appellee.

No. 77–3278.

United States Court of Appeals,
Sixth Circuit.

Argued April 21, 1978.

Decided Aug. 23, 1978.

Ray A. Correa, Sr., Correa & Valazquez, Los Angeles, Cal., Kathleen C. King, Cincinnati, Ohio (Court-appointed), for petitioner-appellant.

Roy Charles Williams, pro se.

Griffin B. Bell, Atty. Gen. of U. S., Dept. of Justice, Washington, D. C., William D. Beyer, U. S. Atty., Kevin P. Connolly, Asst. U. S. Atty., Cleveland, Ohio, for respondent-appellee.

Before PHILLIPS, Chief Judge, MERRITT, Circuit Judge, and PECK, Senior Circuit Judge.

PECK, Senior Circuit Judge.

Petitioner-appellant Roy Charles Williams, Sr., has taken this appeal from the dismissal of his petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255. He was tried for the crimes of conspiracy and possession of narcotics in the Northern District of Ohio, and now alleges that venue there was improper, violating his constitutional right to a trial in the "district wherein the crime shall have been committed." U.S.Const. amend. VI. The district court denied the § 2255 motion, ruling that petitioner's claim of improper venue is not cognizable in a habeas corpus proceeding.[1] We affirm.

---

1. Referring to this action as a habeas corpus proceeding is technically inaccurate, but convenient. 28 U.S.C. § 2255, for all practical purposes, replaces habeas corpus for federal prisoners, providing instead a post-conviction remedy in the form of a motion to vacate, set aside, or correct a sentence in the convenient forum of the sentencing court. The scope of the section is "exactly commensurate with that which had previously been available by habeas corpus," *Hill v. United States,* 368 U.S. 424, 427, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962), and the terms are often used interchangeably.

In 1972, Williams set off on an ill-fated trip, flying from Omaha, Nebraska to Cleveland with a stop-over in Chicago. He checked his bags in Omaha, but one suitcase disappeared en route. Apparently, the routing tag had fallen off the suitcase, so the bag was unloaded at Chicago. Unfortunately for Williams, the bag had no external identification, so a United Airlines passenger agent conducted a routine examination of the contents of the suitcase, in an effort to identify the owner. She discovered sacks of white powder, which later proved to be heroin and cocaine. Federal agents were contacted, who seized the drugs, and replaced the bags with sacks of white flour. The luggage was sent on to Cleveland, where it was picked up by Williams' son. Shortly thereafter, Williams, his son, and a third codefendant were arrested in their hotel room.

Williams was eventually convicted of possession of narcotics, and he appealed that conviction. This Court concluded that the evidence was sufficient to support a finding that Williams had maintained constructive possession of the drugs until they were seized by the federal agents, in spite of the fact that the suitcase had been temporarily lost. *United States v. Williams,* 503 F.2d 50 (6th Cir. 1974). At no time during the trial or appeal did Williams assert that venue was improper. Williams now seeks relief from the sentence of imprisonment imposed under that conviction.

Williams argues that the offense of possession did not begin, continue nor end while he was in Cleveland, where his trial was held. He contends that his constructive possession ended in Chicago, when his bag was lost and the narcotics seized.

Proper venue in federal criminal prosecutions is twice assured in the Constitution. Article III, section 2, paragraph 3 provides:

The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or

Places as the Congress may by Law have directed.

The Sixth Amendment elaborates:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial Jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law.

These constitutional guarantees are reflected in the various venue statutes, including 18 U.S.C. § 3237, which governs "continuing offenses" such as the one with which Williams is charged:

. . . [A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

The sole issue on this appeal is whether the right to proper venue guaranteed by these provisions can be asserted in a post-conviction review proceeding. The scope of inquiry under the habeas corpus power has expanded dramatically within the last few decades from its original limitation to an investigation of the propriety of the jurisdiction asserted by the sentencing court. It is difficult to generalize about the variety of grounds upon which relief is now available. § 2255 itself is not particularly enlightening, providing that relief may be granted "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. . . . "

Petitioner asserts that an allegation of improper venue is cognizable in a § 2255 proceeding on three separate grounds, though the three are intertwined. He contends that proper venue in a criminal case is a jurisdictional prerequisite, fundamental to our constitutional administration of justice. Furthermore, denial of the right to a trial in the proper district is a denial of a consti-

tutional right so important that it is guaranteed twice in the Constitution. Finally, such a trial with improper venue would have been conducted "in violation of the . . . laws of the United States," because proper venue is further mandated by 18 U.S.C. § 3237.

If proper venue is a jurisdictional prerequisite, the issue can be freely raised under § 2255, because a lack of jurisdiction means that the sentencing court was wholly without power to act, and any conviction obtained is void. Petitioner is not without support in his position that proper venue in a criminal case is a jurisdictional issue. The Fourth Circuit has described proper venue as a "jurisdictional imperative," *United States v. Grossman,* 400 F.2d 951, 953 (4th Cir.), *cert. denied,* 393 U.S. 982, 89 S.Ct. 453, 21 L.Ed.2d 443 (1968), and the Seventh Circuit has squarely held that an allegation of improper venue is a "jurisdictional challenge. . . . [S]uch a jurisdictional attack is an appropriate subject of a § 2255 proceeding to determine if petitioner's claim of improper venue has any merit." *Domer v. Smith,* 422 F.2d 831, 832 (7th Cir. 1969). Furthermore, the language of Article III, section 2 is mandatory: "The Trial of all Crimes . . . *shall be held* in the State where the said Crimes shall have been committed." (Emphasis added.)

Nevertheless, we conclude that the issue of venue is not a jurisdictional issue. In deciding a nearly identical issue the Supreme Court held long ago that the jury provisions set out in the same paragraph of the Constitution in the same mandatory language were a "valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the King and the arbitrary or partial judgment of the court," rather than being a necessary "part of the structure of government." The Court went on to rule that "article 3, § 2, is not jurisdictional, but was meant to confer a right upon the accused which he may forego at his election. To deny his power to do so, is to convert a privilege into an imperative requirement." *Patton v. United States,* 281 U.S. 276, 296–298, 50 S.Ct. 253, 258, 74 L.Ed. 854 (1930).

We conclude that venue is likewise a privilege granted to the accused rather than a jurisdictional prerequisite, a conclusion which is consistent with the overwhelming case law holding that improper venue may be waived. The jurisdiction of the federal courts, their power to decide cases, is established by Congress and the Constitution. Article III, § 1 vests the "judicial power," including the power to try federal crimes, in the Supreme Court and such inferior courts as Congress may ordain and establish. Congress has in turn provided that district courts have subject matter jurisdiction over all offenses against the laws of the United States, wherever the offense may have occurred. 18 U.S.C. § 3231. We do not believe that the constitutional provisions relied upon by the petitioner are a limitation on this power; rather they guarantee a privilege to the accused. *United States v. Polin,* 323 F.2d 549 (3d Cir. 1963).

 Since allegations of improper venue do not raise a question of jurisdiction, which would be cognizable under § 2255, the next question is whether the trying of a case in an allegedly improper district, without objection by the defendants, is "in violation of the Constitution or laws of the United States." At first glance, it seems to be both, but this is one of the phrases which the courts have never interpreted to be as broad as it appears. Given the rapid development of habeas corpus law in recent years, decisions as to whether any particular error is cognizable under § 2255 are not carved in stone, but the Supreme Court has provided some general guidance. The phrase does not permit collateral attack on every asserted error of law. Rather, in order to obtain § 2255 relief, the claimed error of law must be a fundamental defect which results in a miscarriage of justice, or which presents exceptional circumstances where the need for the remedy is apparent. *Davis v. United States,* 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974).

 A mere allegation of improper venue, in our judgment, fails to satisfy either

criteria. We do not disparage the importance of venue in a criminal trial; the venue provisions provide a necessary defense to the "unfairness and hardship to which trial in an environment alien to the accused exposes him." *United States v. Johnson,* 323 U.S. 273, 275, 65 S.Ct. 249, 250, 89 L.Ed. 236 (1944) (Frankfurter, J.). Mr. Justice Douglas has identified the origins of the constitutional venue provisions in the pre-Revolutionary British practice of transporting Americans to England or another colony for trial. *Johnston v. United States,* 351 U.S. 215, 224, 76 S.Ct. 739, 100 L.Ed. 1097 (1956) (Douglas, J., dissenting.)[2] Nevertheless, in the absence of any allegation of bad faith on the part of the Government or prejudice to the defendant, improper venue will not ordinarily result in a "miscarriage of justice," and presents no extraordinary need for post-conviction relief.

Most other circuit courts agree with the result reached here, though the reasoning is not always the same. The Eighth Circuit, in *Houser v. United States,* 508 F.2d 509 (8th Cir. 1974) held that as a "pretrial matter," venue is not cognizable under § 2255. Other courts have held that venue is not subject to collateral attack because failure to raise the issue at trial constitutes waiver, relying on Fed.R.Crim.P. 12(b) and (f).[3] *Baeza v. United States,* 543 F.2d 572 (5th Cir. 1976) (waived by guilty plea); *Marcella v. United States,* 344 F.2d 876 (9th Cir. 1965), *cert. denied,* 382 U.S. 1016, 86 S.Ct. 630, 15 L.Ed.2d 531 (1966). We would hesitate to hold that a matter otherwise important enough to be cognizable in a § 2255 post-conviction proceeding may be waived by mere silence or inaction; normally such waiver requires understanding and intelligent relinquishment of the right by the defendant. We prefer to rest our conclusion on the grounds that improper venue is not cognizable.

The decision of the district court is affirmed.

---

2. In May of 1769, the Virginia legislature sent the following message to the King of England:

"When we consider, that by the established Laws and Constitution of this Colony, the most ample Provision is made for apprehending and punishing all those who shall dare to engage in any treasonable Practice against your Majesty, or disturb the Tranquility of Government, we cannot, without Horror, think of the new, unusual, and permit us, with all Humility, to add, unconstitutional and illegal Mode, recommended to your Majesty, of seizing and carrying beyond Sea, the Inhabitants of America, suspected of any Crime; and of trying such Persons in any other Manner than by the ancient and long established Course of Proceeding: For, how truly deplorable must be the Case of a wretched American, who, having incurred the Displeasure of any one in Power, is dragged from his native Home, and his dearest domestick Connections, thrown into Prison, not to await his Trial before a Court, Jury, or Judges, from a Knowledge of whom he is encouraged to hope for speedy Justice; but to exchange his Imprisonment in his own Country, for Fetters amongst Strangers? Conveyed to a distant Land, where no Friend, no Relation, will alleviate his Distresses, or minister to his Necessities; and where no Witness can be found to testify his Innocence; shunned by the reputable and honest, and consigned to the Society and Converse of the wretched and the abandoned; he can only pray that he may soon end his Misery with his life."

Journals of the House of Burgesses, 1766–1769, at 215–216 (1906).

3. The Rules provide in pertinent part:

Rule 12(b) PRETRIAL MOTIONS. . . . The following [defenses] must be raised prior to trial:

(1) Defenses and objections based on defects in the institution of the prosecution; or

(2) Defenses and objections based on defects in the indictment or information (other than that it fails to show jurisdiction in the court . . .).

(f) EFFECT OF FAILURE TO RAISE DEFENSES OR OBJECTIONS. Failure by a party to raise defenses or objections or to make requests which must be made prior to trial . . . shall constitute waiver thereof, but the court for cause shown may grant relief from the waiver.